AO 108 (2/90) Application for Seizure Warrant

FILED

'08 MAR -5 PM 1:47

# United States District Court

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

Southern DISTRICT OF California

In the Matter of the Seizure of
(Address or brief description of the property or premises to be seized)

One (1) 2006 BMW 530I, VIN: WBANE7352CM41382;
one (1) Apple MacBook Pro Notebook Computer, SN: W8739B60X92;
one (1) Olympus Digital Camera (kit), serial number D62511852.

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**

CASE NUMBER: '08 MJ 0681

I Sonny Kilmer being duly sworn depose and say:

I am a(n) U.S. Immigration and Customs Enforcement Special Agent and have reason to believe
Official Title

that in the Southern District of California,
there is now certain property, which is subject to forfeiture to the United States, namely (describe the property to be seized)

one (1) 2006 BMW 530I, VIN: WBANE7352CM41382;
one (1) Apple MacBook Pro Notebook Computer, SN: W8739B60X92;
one (1) Olympus Digital Camera (kit), SN: D62511852;

which is (state one or more bases for seizure under the United States Code)
A vehicle/conveyance and other equipment which are proceeds of a violation of Title 18, United States Code, Sections 1591 and 1594, and is therefore subject to seizure.

concerning a violation of Title 18 United States Code, Section(s) 1591 and 1594
The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof. ☒ Yes ☐ No

Signature of Affiant

Sworn to before me, and subscribed in my presence

3/5/08 at San Diego, California
Date City and State

CATHY ANN BENCIVENGO
U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

**I, Sonny L. Kilmer, being duly sworn, hereby depose and state the following:**

## I. TRAINING AND EXPERIENCE

1. I am a Special Agent with the Bureau of Immigration and Customs Enforcement (ICE), office of Investigations, Human Trafficking Division in San Diego, California. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer since August, 1997. I am authorized by Rule 41(a), Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants pursuant to Rule 4(a) and (c)(1), Federal Rules of Criminal Procedure.

2. I have experience and have received training with respect to conducting investigations of civil and criminal violations of Titles 8, 18, 19, 21, 26, 31, and 46 of the United States Code. My training and experience includes investigations of human trafficking, alien smuggling, financial fraud, money laundering, counter-terrorism, counterfeit, and narcotics interdiction.

3. Human Trafficking is defined under Title 18 of the U.S. Code as the recruitment, harboring, transportation, provision, or obtaining of a person (regardless of citizenship or immigration status) for labor or services, through the use of force, fraud, or coercion/extortion for

the purpose of subjecting a victim to involuntary servitude, peonage, debt bondage or slavery; or sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age.

4. I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through my own review of the documents discussed herein, interviews of witnesses, investigative reports, and reliable law enforcement sources, including consultation with other law enforcement agents, and I believe it to be true. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the issuance of a seizure warrant, it does not include all the facts that have been learned during the course of investigation.

## II. PROPERTY TO BE SEIZED AND FORFEITED

5. One (1) blue 2006 BMW 530I, bearing California plate 5SES968, vehicle identification number WBANE7352CM41382, registered owner David Anthony LOVELL, one (1) Apple MacBook Pro Notebook Computer, serial number W8739B60X92; one (1) Olympus Digital Camera (kit), serial number D62511852; each item presumed to be located at 5050 Clairmont Mesa Boulevard in San Diego, California. These items are proceeds of or an item purchased with proceeds obtained directly from violations of 18 USC 1591, Sex trafficking

of children or by force, fraud or coercion, or were used to facilitate or in furtherance of the commission of the above-referenced criminal violations.

## III. STATUTORY BASIS FOR SEIZURE AND FORFEITURE

6. Affiant believes that the above-listed items constitute a portion of the fruits or proceeds from the commission of violations of Title 18, United States Code, Section 1591, and were used to facilitate or in furtherance of the commission of violations of Title 18, United States Code, Section 1591, which provide, in relevant part:

> *18 USC 1591*
> *(a) Whoever knowingly . . . in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, or obtains by any means a person . . . knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).*

//

The elements of this offense are as follows:

1) *the defendant knowingly recruits, entices, harbors, transports, provides, or obtains by any means a person;*

2) *the defendant knows that force or coercion will be used to cause the person to engage in a commercial sex act, or that person has not attained the age of 18 years;*

3) *the defendant knows the person will be caused to engage in a commercial sex act; and,*

4) *the offense is in or affecting interstate or foreign commerce.*

*18 USC 1594*

*Whoever attempts to violate section 1581, 1583, 1584, 1589, 1590, 1591.*

*(a)Felony Sentence: Punishable in the same manner as a completed violation of that section.*

*(b)The court, in imposing sentence on any person convicted of a violation of this chapter, shall order, in addition to any other sentence imposed and irrespective of any provision of State law, that such person shall forfeit to the United States -*

*(1) such person's interest in any property, real or personal that was used or intended to be used to commit or to facilitate the commission of such violation; and*
*(2) any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation.*

*(c)(1)The following shall be subject to forfeiture to the United States and no property right shall exist in them:*

*(A)Any property, real or personal, used or intended to be used to commit or to facilitate the commission of any violation of this chapter;*
*(B)Any property, real or personal, which constitutes or is derived from proceeds traceable to any violation of this chapter.*

*The provisions of chapter 46 of this title relating to civil forfeiture shall extend to any seizure or civil forfeiture under this section.*

Intrastate conduct may constitute evidence that the offense "is in or affecting interstate or foreign commerce." <u>See</u> <u>United States v. Evans</u>, 476 F.3d 1176, 1178-79 (11th Cir. 2007) (recognizing Congress' authority to generally regulate intrastate conduct that substantially

affects interstate commerce, and human trafficking in particular). Requisite evidence may be considered in the aggregate and may include the use of hotels that serve interstate travelers, the use of condoms that traveled in interstate commerce, and the use of telephones in the commission of the offenses even without evidence that the calls were routed through an interstate system. Id. at 1179-81.

## IV. SUMMARY OF INVESTIGATION

7. In January of 2008 Sheriff's Deputies of the County of San Diego responded to a report of Pimping and Prostitution in the city of Vista, California. There they discovered two (2) females, one eighteen (18) years of age, the other seventeen (17) years of age, involved in the solicitation of commercial sex. Both of these subjects admitted to being directed, or "pimped", by David LOVELL, a male subject also encountered at the scene. Deputies determined that LOVELL was in fact soliciting both TORRES and SANTOS for commercial sex.

8. Following the arrest and subsequent interviews of the victims and principals, Sheriff's deputies obtained a search warrant for the residence of LOVELL, which revealed

additional evidence of human trafficking and financial transactions related to same. Analysis of the seized records further substantiated that subject LOVELL did not possess the income potential to account for the legal possession of a large sum of U.S. currency seized from his person or the possession of several high-end purchases, including a 2006 BMW which records show LOVELL purchased for a one-time payment of $50,596.05 in cash.

## V. INVESTIGATION

9. On January 3, 2008, deputies from the San Diego Sheriffs Department (SDSO) responded to a radio call at 1850 Thibodo Road in the City of Vista. The initial information conveyed to the deputies was that there was a female running from her pimp, who had threatened her. Upon arriving at the scene, SDSO Detective James Smith observed a black male sitting in a late model BMW sedan outside of the apartment gates of 1850 Thibodo Road. Det. Smith noted the license plate number, California 5SES968, believing the subject may be related to the initial report.

10. Upon arriving at the scene, Det. Smith encountered Kacilyn De Los SANTOS (hereinafter referred to as

"SANTOS"), the victim who had reported being chased by her pimp. SANTOS stated that her pimp was a black male named David LOVELL (hereinafter referred to as "LOVELL"), and described his vehicle as the same BMW that Det. Smith had observed in front of the complex. Det. Smith requested that uniformed deputies contact LOVELL and detain him pending further investigation into SANTOS claims.

11. SANTOS stated that she had been working as a prostitute for LOVELL for approximately six (6) months, and that she had been recruited by L. TORRES (hereinafter referred to as "TORRES"), a minor and another prostitute working for LOVELL. SANTOS claimed that after being recruited to work as a prostitute for LOVELL, she had been pressured into having sex with both TORRES and LOVELL at the same time. SANTOS stated that she had agreed to the act because she was afraid of what LOVELL would do to her if she refused. SANTOS stated that on occasion she had refused sex to LOVELL, and claimed that he then went to TORRES and assaulted her, both verbally and physically, for the refusal. Det. Smith stated that this was a common tactic used by pimps to instill fear in other prostitutes.

12. SANTOS stated that she had been shown by TORRES how to solicit sex by posting advertisements on the internet website craigslist.com. Craigslist is an online bulletin board used to advertise goods and services; the erotic services section of the website is well known for the nationwide solicitation of prostitution. These postings normally consist of a pornographic or nude image and a description, often in code, of the services offered, as well as the prices for those services, usually broken down into blocks of time.

13. SANTOS stated that she normally posted her ads with a nude photo of herself, and prices covering anywhere from fifteen (15) minutes to one (1) hour for services. SANTOS stated that upon meeting with a client, she and the client would discuss and agree upon a period of time as well as the sex act to be performed. SANTOS stated that following an appointment she would give the money paid to her by the client for sex to either TORRES or LOVELL. If the money was delivered to TORRES, she would immediately pass it on to LOVELL. SANTOS estimated that she had earned approximately $50,000.00 USD for LOVELL while working for him as a prostitute.

14. SANTOS voluntarily accessed the craigslist.com accounts used to post both her and TORRES for SDSO detectives. Upon reviewing the account, which was connected to the Yahoo emails of "home of investment 08@yahoo.com" and "home of hottflashing@yahoo.com" , detectives observed and printed two thousand and seventy (2070) recorded craigslist.com postings, from the combined accounts. Each of the postings was a solicitation for sex, and was spread out from January of 2007 to December of 2007. Within the said postings were several craigslist.com forums, or venues, other than those within California, including Seattle, New Jersey, New York City, Houston, Chicago, and Atlanta.

15. Craigslist.com hosts hundreds of separate forums which specifically advertise in a particular city or country. In order for an advertisement or solicitation to be seen in a targeted city or country the posting must be assigned to that particular forum. The Apple MacBook Pro Notebook Computer and the Olympus Digital Camera identified herein as assets to be seized were used by LOVELL, TORRES, and SANTOS to post ads promoting their prostitution services on

the Internet.

16. SANTOS stated that she was fearful of LOVELL because she had seen him physically assault TORRES on many occasions. SANTOS stated that LOVELL would physically assault TORRES when he was displeased with SANTOS. SANTOS stated that TORRES was LOVELL'S "Bottom Bitch", a term denoting a pimps lead or favorite prostitute, and as such was responsible for SANTOS and the money she earned. Based upon the historic account offered by SANTOS, your affiant believes LOVELL used threats of force and violence to compel SANTOS and TORRES to do his bidding and work as prostitutes for him. Based on my training and experience, your affiant knows that this technique is commonly used by pimps to control the prostitutes they manage.

17. SANTOS stated that both LOVELL and TORRES had access to her bank account. They would deposit money into it when SANTOS needed funds to purchase food, gas or funds to charge her prepaid cellular telephone, which LOVELL had provided for her. Based on my training and experience, you affiant knows that this technique of controlling a prostitute's assets is another commonly used by pimps. It

is important for pimps to maintain full control of their prostitutes. This goal is better accomplished by controlling the prostitute's access to money.

18. SANTOS stated that she had decided to stop prostituting in November of 2007, but had been afraid to leave LOVELL because she was afraid of what he may do to her, TORRES, or her family. SANTOS stated that on that day she had finally had enough. She ran away from LOVELL on foot because he had taken her car keys in an attempt to prevent her from leaving.

19. Following the above account to Det. Smith, LOVELL was placed under arrest for PC 266H(a) Pimping, PC 266I(a)(1) Pandering, and PC 261(a)(2) Rape by Force or Fear. LOVELL was searched incident to his arrest. During that search, deputies discovered approximately $1800.00 USD in cash concealed in the center console of the 2006 BMW, $5,000.00 USD in cash on LOVELL'S person, and a set of vehicle keys that was later determined to belong to SANTOS.

20. SANTOS informed the deputies that TORRES was currently in apartment 203 at 1850 Thibodo Road. Deputies contacted

TORRES at the above address and arrested her for PC 266H(a) Pimping. TORRES, SANTOS, and LOVELL were then transported to the San Diego Sheriff Department (hereinafter referred to as "SDSD") Vista Patrol Station.

21. TORRES, a minor, was interviewed by detectives at the SDSD Vista Patrol Station. Prior to her interview TORRES was advised of her Miranda rights by Det. Charlot of the SDPD. TORRES stated that she understood her rights and agreed to speak to detectives. TORRES stated she had known LOVELL since 2006, and had been working for him as prostitute for approximately a year and a half, since the age of sixteen (16). TORRES stated several months prior she had begun communicating with SANTOS through the website Myspace.com. TORRES stated she eventually convinced SANTOS that she could make a lot of money working as a prostitute. Once SANTOS agreed to work as a prostitute, TORRES first posted ads on Craigslist soliciting sex with both her and SANTOS as a package-deal, and then trained SANTOS to post her own solicitations.

22. TORRES stated LOVELL had taken her and SANTOS to New York City in October of 2007. TORRES stated LOVELL had

paid for their hotel stay of six (6) nights at the Belvedere Hotel with cash. TORRES stated after two (2) days they returned to California because the weather in New York was too cold. TORRES stated the hotel refunded the balance of LOVELL'S payment by issuing him a check for $3000.00 USD. TORRES claimed they had not solicited sex while staying in New York.

23. LOVELL was interviewed by detectives at the SDSD Vista Patrol Station. Prior to his interview LOVELL was advised of his Miranda rights by Det. Charlot of the SDPD. LOVELL stated he understood his rights and agreed to speak to detectives. LOVELL initially denied having sex with either TORRES or SANTOS. LOVELL further stated he had never been to a hotel with either of the women. LOVELL later changed this statement and told detectives he had been to a hotel in Torrance, CA, and he had seen SANTOS there, but not TORRES. LOVELL stated he knew TORRES and SANTOS were prostitutes, but he hung out with them just to have fun. LOVELL denied traveling to New York City with TORRES and SANTOS, claiming he would have been prevented from doing so due to the terms of his probation, stemming from a domestic violence conviction, preventing him from traveling outside

the state of California.

24. LOVELL stated he was a student and was not otherwise employed. He explained to detectives that his father, who was retired, provided him with $600.00 USD every two weeks, and that his mother also helped him financially at times. When asked if either TORRES or SANTOS ever gave him money, LOVELL stated that they did on occasion when he asked for money to pay for something specific.

25. LOVELL later changed his story regarding the trip to New York City, and stated he had in fact traveled there with both TORRES and SANTOS, but insisted the two women had paid for the trip. LOVELL also told detectives SANTOS was currently prostituting for her old boyfriend, who he identified as "Rico Love".

26. Following LOVELL'S interview detectives asked TORRES if she knew who Rico Love was. TORRES stated it was LOVELL'S street name. Detectives later found several text messages in LOVELL'S cellular phone referring to him as Rico.

27. On January 10, 2008, detectives from the San Diego Sheriff's Office executed a state search warrant at 1822 Thibodo Road #203, the residence of David LOVELL. During the course of the search warrant deputies discovered a gray Sentry brand personal safe in a walk in closet located in the bedroom. The safe was transported to the Sheriff's substation in Vista where it was forced open.

28. Upon reviewing the contents of the safe, deputies discovered several documents, including contracts and receipts identifying the recent cash purchase of high value items.

29. A vehicle contract drawn up by South Bay BMW of Torrance, California in October of 2007, recorded the purchase, by LOVELL, of the vehicle to be seized, a 2006 BMW 530i, VIN WBANE73526CM41382. The vehicle was purchased by LOVELL with a single cash payment of $50,573.05 USD. Two (2) sales receipts from the Apple Store in San Diego reflected the purchase of the MacBook Pro Notebook computer to be seized, serial number W8739B60X92, for $2,700.67 USD, and an Apple Wireless Mouse for $74.35. Both items were purchased with cash. Two (2) sales receipts from Jerome's

Furniture in San Diego showed the purchase of furniture for $2,764.14 in cash. A sales receipt from Guitar Center in Lawndale, California showed a one time purchase of electronics for $3,000.00 USD, also paid in cash. Four (4) sales receipts from Fry's Electronics in San Diego showed the purchase of a professional grade digital camera and accessories to be seized, as well as computer software used in the manipulation of digital photographs, also to be seized, for a total of $2,222.21 USD, all paid in cash. A sales receipt from AT&T in San Diego showed the purchase of an Apple 8GB iPhone for $500.00 USD, paid in cash.

30. Among the papers discovered in the safe was a document related to a domestic violence case involving LOVELL, dated October 8, 2007. The single page document was on Neighborhood Family Center stationary. The Neighborhood Family Center is located at 15508 South Western Avenue, Suite 203, Gardena, California. The document is signed by LOVELL and a witness. The document refers to a court-ordered domestic violence education program LOVELL was ordered to attend and complete. In the document, LOVELL agrees to pay $25.00 per session. Moreover, in the document, LOVELL affirmatively represents he could not

provide proof of income, that he had no regular weekly income, and that, "my parents provide for me."

31. Also found in the safe was one (1) dental prosthetic fashioned from gold and diamonds. This prosthetic, or "grill" as it is called in street jargon, is a type of jewelry worn over the teeth. Pimps wear this distinctive and expensive jewelry for the purpose of identifying them as a pimp, to demonstrate success to others in the pimp and prostitution culture, and to attract new prostitutes.

32. The investigation has not revealed a legitimate source of income for the $6,802.00 in U.S. currency found with LOVELL at the time of his arrest, the approximately $8,500.00 in U.S. currency deposited within his account at Bank of America, nor the $50,596.05 paid in cash for the 2006 BMW 530i. Likewise, no source of legitimate income or funds could be found that would have paid for the Apple MacBook Pro Notebook Computer, Olympus Digital Camera kit, or the dental prosthetic, or "grill", owned by LOVELL. Based upon the facts revealed in the investigation, as described above, your affiant believes LOVELL'S income is generated through pimping and pandering, in violation of

federal law. Your affiant believes all of the assets to be seized were purchased with the proceeds of LOVELL'S illegal pimping, pandering, and prostitution activities.

**CONCLUSION**

33. Based on the above information and observations, there is probable cause that the 2006 BMW 530i, the Apple notebook computer, and the Olympus Digital Camera are proceeds traceable to violations of Title 18, United States Code 1591 and 1594, and are subject to forfeiture pursuant to Title 18, United States Code, Section 1591. There is also probable cause to believe the asset(s) identified above as those to be seized were used by LOVELL, TORRES and SANTOS to facilitate and in furtherance of their criminal activities.

34. Therefore, I request that a warrant be issued for the seizure of the following asset(s):

a. One (1) blue 2006 BMW 530I, bearing California plate 5SES968, vehicle identification number WBANE7352CM41382, registered owner David Anthony LOVELL.

b. one (1) Apple MacBook Pro Notebook Computer, serial number W8739B60X92;

c. and one (1) Olympus Digital Camera (kit), serial number D62511852.

35. The criminal conduct described in this affidavit is the subject of an ongoing federal investigation. Therefore, I request that this affidavit, application for seizure warrant, seizure warrant, and all related documents be sealed so as not to compromise this investigation.

I declare under the penalty of perjury the foregoing is true and correct to the best of my knowledge.

Sonny L. Kilmer
Special Agent
U.S. Immigration and Customs Enforcement

Subscribed and sworn to before me on this 5th day of March, 2008.

UNITED STATES MAGISTRATE JUDGE
**CATHY ANN BENCIVENGO**
**U.S. MAGISTRATE JUDGE**